No. 42,012

LEA ROY T. HURLEY, MARGARET HURLEY, JEFF BARNES, STELLA S. SIMMONS and A. B. GLATHART, *Appellants*, v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF DOUGLAS, STATE OF KANSAS, sitting and acting as the Governing Body of RIVERSIDE SEWER DISTRICT No. 8 in DOUGLAS COUNTY, KANSAS; WALTER KAMPSCHROEDER, ELMER OUSDAHL and WILL H. HAYDEN, members of the BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF DOUGLAS, STATE OF KANSAS; and D. E. MATHIA, County Clerk of the County of Douglas, State of Kansas, *Appellees*.

(360 P. 2d 1110)

Opinion filed April 8, 1961.

*Raymond F. Rice* and *Robert B. Oyler*, both of Lawrence, argued the cause and were on the brief for the appellants.

*Charles D. Stough*, of Lawrence, argued the cause, and *James W. Paddock*, of Lawrence, was with him on the brief for the appellees.

The opinion of the court was delivered by

PRICE, J.: Plaintiffs are the owners of land located within Riverside Sewer District No. 8 in Douglas county. They brought this action under the authority of G. S. 1949, 60-1121, to enjoin the defendant public officials from entering on the tax rolls of the county a special assessment levied for the construction of a main trunk sewer in the district.

The trial court denied injunctive relief, and plaintiff landowners have appealed.

The project for the creation of the sewer district was initiated in 1957 under the authority of G. S. 1949, 19-2704 to 2715, as amended. There appear to be no questions raised as to the regularity of proceedings by which the district was created. Involved in the case, however, are two provisions of G. S. 1959 Supp. 19-2705, which in pertinent part read:

". . . All of the cost and expenses of the work provided for in· this act shall be assessed against the lots and pieces of ground contained within the district in which the same is situated (exclusive of improvements) and shall be levied and collected as one tax, in addition to the other taxes and assessments, and shall be by the county clerk, when so ordered by the county commissioners, placed upon the tax roll for collection subject to the same penalties, entitled to the same rebate, and collected in the same manner as other taxes: . . . *Provided further, however*, That if the board of county commissioners shall find that all of the property benefited by said improvements is benefited equally, the cost thereof may be assessed against such property on an area

basis and notice of such finding and of said assessment shall be given by publishing the resolution fixing the assessments once a week for two (2) consecutive weeks in the official county paper. . . ."

There are 1,115.715 acres within the district. The cost of the sewer was $94,295.80. The defendant board of county commissioners found that all property in the district was *benefited equally* and under the authority of the last-above-quoted provision assessed the total cost on an area basis—that is, against all of the land in the district equally—in the amount of $84.52 per acre.

In this action to enjoin such assessment plaintiffs contend the finding of "equal benefit" is contrary to fact, and that the action of defendant board is an arbitrary and unwarranted exercise and abuse of power, and therefore null and void.

Other than the ultimate question of *equal benefit* to all land within the district—there are really no disputed questions of fact in the case.

The sewer district in question includes an extensive area northwest of and, in part, adjoining the city of Lawrence. The project was initiated in 1957, and a petition for the establishment of the district, addressed to the board of county commissioners, was circulated. The secretary of the Lawrence Chamber of Commerce, and who also was secretary of the Lawrence Industrial Development Company, was active in circulating the petition. The proposed district was irregular in shape, with an extreme extent of two miles north and south and slightly more than two miles east and west. As heretofore stated, it included 1,115.715 acres. The petition for the creation of the district requested that the cost of the sewer be assessed against the lots and pieces of ground within the district but did not request that such assessments be on an area basis or call for any specific method of assessment. The project included forty-eight separate tracts, varying in size from one-fourth acre to 160 acres, and adapted to different and varying uses. By reason of its proximity to the city, and the availability of water and other utility services and transportation facilities, approximately one-third of the total area, located in the eastern part of the district, was adapted to industrial use. Another one-third had possibility for housing development, and the remaining one-third—in the western section—was predominantly farm land.

The petition for the creation of the district was not signed by any of the plaintiffs, and of the twenty-seven different owners of land

within the proposed district, only nine signed the petition. Those nine, however, were the owners of 604.219 acres, constituting approximately fifty-four percent of the total acreage. Of these 604.219 acres, a total of 321.562 acres were owned by Hallmark Cards, the Santa Fe Land Improvement Company and the Lawrence Industrial Development Company, whose holdings were adapted to industrial use and who were interested only in industrial development. One of the remaining six signers was a lumber company engaged in the retail lumber business, and which had, in September, 1957, acquired 160 acres in the proposed district.

Plaintiffs' lands are located at the southwest extremity of the district and their minimum distance from the trunk sewer ranges from about one mile up to approximately one and three-fourths miles. There are no improvements on any of their tracts located within the district. There is no access by road to two of plaintiffs' tracts, and no utilities are presently available to any of their tracts included in the district. One of their tracts is described as "rough land having little value for farming" and is rocky timber land with a creek running through it, and with a difference in elevation of from seventy to eighty feet. No submain or lateral sewers have been constructed from the main trunk sewer in the direction of any of the lands owned by plaintiffs. The main trunk sewer which was constructed lies generally in the east central portion of the district.

At the time of trial—in October, 1959—aside from Hallmark Cards and Callery Chemicals, no other industrial development had taken place in the district. The Sperry Rest Home, located on a tract containing 16.667 acres, had made direct connections with and was using the main sewer, as was Hallmark Cards, located on a tract containing 24.09 acres. The Hallmark plant was constructed simultaneously with the sewer. The only other land connected with and using the sewer at the date of trial was the Callery Chemical plant which was served by a submain and lateral constructed northward from the main sewer. The volume of water used by the Hallmark and Callery plants and discharged into the main sewer reached a maximum of 1,900,000 gallons per month by each plant in 1959, as compared with an average family use of 7,000 to 8,000 gallons per month.

Although there was some evidence to the effect that certain tracts in the district had "increased in value" because of the construction of the main trunk sewer, no residential developments had, as of the

time of trial, taken place, and such development was uncertain and problematical because of the high prices which owners were asking for their land and the fact that "people do not want to live near an industrial district." In other words, future development is highly speculative. In addition, the evidence was to the effect that if and when all of the land in the district is sewered by the construction of submains and lateral sewers the cost thereof would be about $1,200 per acre.

While it must be conceded there is some testimony to the effect that in arriving at their finding of "equal benefit" the county commissioners exercised their "respective" judgments, it is quite apparent (and as found by the trial court) their opinions were predicated, for the most part, upon the advice and opinions of the engineers employed to plan and supervise the construction of the main sewer, which advice and opinions were based upon the fact the sewer was of a size (24 to 30 inches) sufficient to serve the entire area included in the district.

At the conclusion of the trial the court made extensive findings of fact which leave no doubt as to its honest and conscientious approach to the problem. It is noted, however, the court did *not* find that all land within the district was *benefited equally*—it merely found that plaintiffs' land was benefited by the construction of the main trunk sewer. It further found the action of the board of county commissioners could not be described as arbitrary, unjust or discriminatory, and that the finding that all property in the district was benefited equally was authorized by statute and therefore lawful, and that the assessment on a per-acre basis was legally made.

In support of the trial court's judgment defendants contend that a matter of this kind is administrative in character, rather than judicial; that the determination of the question by the body authorized to act in the premises is conclusive on the property owners and on the courts unless it is palpably arbitrary or grossly unequal; that benefits from installation of a sewer system arise not only from its use but from an availability for use and that the construction of a sewer benefits real property just as does paving of streets and the laying of mains; that from the facts of this case it is clearly shown that the sewer itself is of equal benefit to all of the land in the district because all of the sewers, submain and lateral, that will be built in the area will have no outlet except the main trunk sewer in question; that from an engineering standpoint it therefore results in equal

benefit, and finally, that findings by a trial court, if supported by substantial evidence, are binding on appeal.

The cases of *Alber v. Kansas City,* 138 Kan. 184, 25 P. 2d 364, and *Johnson County Comm'rs v. Robb,* 161 Kan. 683, 171 P. 2d 784, were mentioned by the trail court in its memorandum decision and are discussed in the briefs. Because of factual dissimilarity, however, they are of doubtful authority on the question here presented.

As abstract academic propositions, the correctness of defendants' contentions perhaps may be conceded. It also is conceded that ordinarily courts do not, and should not, "second guess" administrative bodies, such as a board of county commissioners, in a matter of this kind. On the other hand, while the right of the legislature to enact the above-quoted provision pertaining to assessment on an area basis is not questioned—it by no means follows that the board's finding of an equality of benefits is conclusive—for whatever method may be adopted for the apportionment and assessment of benefits from special improvements, it must be just and equitable, and if palpable injustice results from its application equity will step in and grant relief. (*Railroad Co. v. Abilene,* 78 Kan. 820, syl. 6, 98 Pac. 224.)

As before mentioned, the trial court, in upholding the finding by the board, concluded only that plaintiffs' land was "benefited" by the construction of the main trunk sewer—it did *not* find that all land within the district was *benefited equally,* which, under the statute, is a condition precedent to the assessment as made by the board. The court also found that the prospect of early residential development in the district was "uncertain," but that it could not be said that such was improbable—thus lending weight to plaintiffs' contention that such finding is equivalent to finding that any benefits to their land are contingent, remote and speculative, as contrasted to benefits which are actual and real.

In order to illustrate the discrimination and unreasonableness of the assessment made pursuant to the finding by the board of "equal benefits," we mention two examples urged by plaintiffs in their brief:

The rough, rocky and unimproved forty-acre Hurley tract, only a few acres of which could be cultivated, and not adapted to industrial use, and with only a remote and speculative possibility of future residential development, located one and one-half miles from the trunk sewer, and unable to make use of sewer facilities until water is provided and intervening tracts developed and long laterals

constructed at a high cost, was assessed on the same per-acre basis as the smooth and level 16.667-acre Sperry Rest Home Tract, which was intercepted by the main sewer. To this sewer a connection already had been made by Sperry, and it also would be immediately available to serve the residential lots into which the remainder of the tract had been platted and subdivided. Both the Sperry and Hurley tracts were assessed at the rate of $84.52 per acre, the total assessment on the Sperry tract amounting to $1,408.63, whereas the total assessment on the Hurley tract amounted to $3,380.64. In the light of physical facts, and in the very nature of things, the assessment on the Hurley tract, by comparison, is palpably so unjust and excessive as to amount to virtual confiscation.

Hallmark Cards owns two tracts aggregating 24.09 acres. It constructed thereon, simultaneously with the construction of the sewer, a large plant. As of the time of trial, this plant, in connection with its extensive operations, was using and discharging into the sewer an average of more than 1,500,000 gallons of water per month. By the construction of a comparatively short connection to the main sewer there became available to the Hallmark plant complete sewer facilities for which the total assessment was only $2,205.02. On the other hand, an assessment of $6,761.28 was levied against the eighty-acre Glathart tract, despite the fact it was a rough, unimproved, inaccessible, unproductive and heavily wooded tract, a mile distant from the sewer, not adapted to industrial use, and with no need for sewer facilities either then or within the foreseeable future. By comparison, the unjustness and unreasonableness of these two assessments is obvious.

In conclusion—we hold that the finding of the board of county commissioners that all lands within the district were "benefited equally" simply is contrary to the facts; that the assessment on that basis of all lands within the district was therefore unjust, unreasonable, discriminatory and grossly disproportionate to the benefits received, and that the trial court erred in denying injunctive relief.

The judgment is therefore reversed.