No. 46,130

SNYDER REALTY COMPANY, *Appellant*, v. CITY OF OVERLAND PARK, KANSAS, *Appellee.*

(492 P. 2d 187)

Opinion filed December 11, 1971.

*James K. Logan,* of Payne and Jones, Chartered, Olathe, argued the cause, and *Robert P. Anderson,* of the same firm, and *William S. Allen,* of Lenexa, were with him on the brief for the appellant.

*Donald C. Amrein,* of Pflumm, Mitchelson and Amrein, Mission, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

FOTH, C.: This is an action to enjoin the levying of a special assessment against plaintiff's real estate for certain street improvements made by the defendant City of Overland Park. The trial court upheld the assessment and refused to enjoin its levy; plaintiff appeals.

The basic issue is whether plaintiff's property was lawfully included within the improvement district created by the defendant city.

The improvement made was the paving to a width of 36 feet of two city streets, together with accompanying storm drainage and sidewalks. Those streets were Antioch Road from 101st Street to Highway I-435, a north-south distance of ¾ mile; and 103rd Street from Switzer to Metcalf, an east-west distance of two miles. Antioch bisects the improvement of 103rd, while the latter crosses Antioch ¼ mile south of its northern extremity and ½ mile north of its southern. The improvement thus forms a cross with elongated east-west arms.

In the southeast quadrant of this cross sits plaintiff's property approximately ½ mile from Antioch on the west and ¼ mile from 103rd on the north. It is in the southeast corner of a quarter section of land, the balance of which is owned by a country club, with the

improved streets running along the north and, more importantly, the west edges of the quarter.

The property itself has dimensions of 195 feet north-south by 840 feet east-west, containing about 3.7 acres. On it is built the Brookridge County Club Apartments, consisting of 63 living units. It is landlocked except for a private drive over an easement running ½ mile to the west where, after a short jog to the north, the drive opens onto Antioch.

The opposite map illustrates the situation. The hatched area shows the improvement and also roughly approximates the benefit district—except for plaintiff's property. Lowell Avenue, immediately east of plaintiff's property, is not an open street.

The improvement was initiated under K. S. A. chapter 12, article 6a (as amended), the general improvement and assessment law of 1957. A public hearing on the advisability of the project was held, at which plaintiff appeared and protested the inclusion of its property in the proposed improvement district. At the conclusion of the hearing the governing body of the city found the project advisable and passed the customary resolution, which included the following definition of the improvement district and proposed method of assessment:

"(c) The boundaries of the proposed improvement district to be the rear or side property lines of each property *abutting* said streets to be improved, provided that in no event shall the boundary line of the district exceed 180 feet from the centerline of the streets to be improved, *except as hereinafter provided. Any residential property, which carries a zoning higher than R-1, and which is being served by a private drive off a street to be improved, shall be included within the limits of the improvement district, and its North-South dimension nearest the improvement shall be assessed as if it were abutting said street to be improved, and its boundary for improvement district purposes shall be 180 feet further from the street to be improved than its property line nearest the improvement.* The intent of this recommendation is to assess all abutting property to a depth which would correspond to the lot lines of abutting property not to exceed one hundred eighty feet (180') from the center-line of the streets to be improved and to assess no property which does not abut the streets to be improved, except as hereinbefore provided.

"(d) The method of assessment shall be: total project costs be determined and assessed uniformly per abutting foot against property within the district in the following manner: A. Properties within the district which are zoned other than R-1 shall be assessed uniformly for their share of the total project cost for the 36 foot wide street. B. Properties within the district which are zoned R-1 shall be assessed uniformly for the costs of a minimum standard street, which costs shall include necessary grading, the cost of a pavement 28 feet wide and 8 inches thick, and their share of the total storm drainage costs.

C. All properties within the district shall share uniformly all engineering, legal, and other administrative expenses. D. The City shall contribute the difference between the construction costs identified heretofore in Section B and the construction costs for the 36 foot street.

"Owners of property involved shall pay the rate of assessment according to the zoning classification of said property at the time of the spreading of assessments." (Italics added.)

The italicized language was obviously designed to and did catch plaintiff's property. No other property fitted the "except as hereinafter provided" clause and no other property was included within the assessment district which did not abut the streets improved. Paraphrased, the resolution created a district which included "all abutting property, *and also Snyder's property*, which is to be assessed *as if it abutted Antioch*."

The result was an assessment against the west 180 feet of plaintiff's property in the amount of $5,221.40. The balance of the $530,453 to be assessed was spread on the property abutting the two streets.

To overcome the action of the governing body plaintiff must shoulder a heavy burden. We have summarized the situation as follows:

"In defining the boundaries of an improvement district, the members of the governing body of a city are bound to act fairly and in good faith.

"It is a general rule of law that courts will not enjoin action undertaken by city governments unless a clear abuse of discretion has been shown.

"Municipal authorities are vested with [broad] discretion in establishing an improvement district pursuant to K. S. A. 12-6a04, and in levying assessments against property located therein, and their determination is not subject to review in the absence of a showing of fraudulent or arbitrary conduct." (*Giddings v. City of Pittsburg*, 197 Kan. 777, 421 P. 2d 181, Syl ¶ ¶ 3-5.)

In the same case we said:

". . . The criterion, of course, is whether the area to be assessed, and hence to be included in the improvement district, will be benefited by the improvement. Such is the standard by which the sufficiency of the petition is to be gauged and the improvement district established. It is true that the determination of whether the area will be benefited demands the use of judgment on the part of the governing body. It is true, also, that such judgment may not be exercised arbitrarily. Nonetheless, a city is not given *carte blanche* to approve *any* petition for street improvements or to establish *any* improvement district to pay therefor. The standards for doing so are set by law and must be followed." (Id. at 786.)

Similar sentiments have often been expressed. See, *e. g., Newson v. City of Wichita*, 186 Kan. 444, 351 P. 2d 10; and cf. *East-*

*borough Corporation, Inc., v. City of Eastborough,* 201 Kan. 491, 441 P. 2d 891.

Plaintiff recognizes these principles, but bases its challenge primarily on what it claims is a wholly arbitrary exclusion from the district of property which it claims is benefited at least at much as that which it owns, and which is included. We believe this contention has merit. While the main concern of plaintiff's argument is with the subdivision occupying the ½ section immediately west of Antioch, we believe a consideration of the ¼ section in which plaintiff's property is located is sufficient to illustrate the point.

We recently had occasion to review the underlying theory on which special assessments are levied in *Mullins v. City of El Dorado,* 200 Kan. 336, 436 P. 2d 837. We there pointed out the familiar concept:

"The foundation of the power to make a special assessment for a local improvement of any character, including the construction of a sanitary sewer system, is that the property against which the assessment is levied derives some special benefit from the improvement. A special assessment, therefore, is in the nature of a tax levied against property according to the benefits conferred. While the property is made to bear the cost of the improvement, it or its owner suffers no pecuniary loss thereby since, theoretically at least, the property is increased in value by an amount equal to the tax levied against it." (p. 341.)

Most pertinent here is the principle reiterated there that when a public improvement is made justifying a special assessment to property because of the benefits which accrue, "[t]he benefit from the improvement is presumed to inure *to the property itself rather than to the particular use being made of it at the time."* (Id. at 345. Emphasis added.)

We applied this principle in an extreme case in *State, ex rel., v. City of Topeka,* 201 Kan. 729, 443 P. 2d 240, where the land used by the state of Kansas for its Reception and Diagnostic Center was held amenable to an assessment for a neighborhood park. The present occupants of the assessed property, convicted felons, clearly would derive little benefit from the presence of a park nearby, and the unlikelihood of any other use of the property in the foreseeable future was stipulated. These factors were held to be irrelevant; the ground itself was "benefited" by the creation of the park, and this was sufficient to justify an assessment against it.

It seems to us that the inclusion of plaintiff's property and the exclusion of the surrounding country club flies squarely in the face

of this principle. Were it not for its present use for an apartment complex this property could by no stretch of the imagination be deemed specially benefited by the paving of a street ½ mile away—it is inconceivable that the city would reach out ½ mile to include in the district a 3.7 acre plot of unimproved land, by-passing all the identical land in between. By the same token, if plaintiff's property—qua property—*is* benefited, so is the remainder of the quarter section in which it lies, and to the same extent. Should such remainder, or any part of it, be similarly developed for apartment houses its inhabitants would likewise use the improved streets. There is no reason why it should not likewise now be assessed for such special benefits, *if they in fact accrue* to land so far removed from the improvement.

The act under which the assessment was made provides that the benefit district should include the "property in the area *deemed by the governing body* to be benefited by such improvement for *special benefits conferred upon such property.*" (K. S. A. 12-6a02, italics added.) The initial judgment is that of the governing body but, as we have noted, that judgment is not wholly unfettered. It may not be exercised arbitrarily.

The same act provides that the method of assessment shall be such that it *"will result in imposing substantially equal burdens or shares of the cost upon property similarly benefited."* (K. S. A. 12-6a08, italics added.) The district created and the assessment made here in our view fail to comply with this statute. A "substantially equal" burden is not imposed on more than 100 acres of land which is closer to the improvement and is at least "similarly benefited" to that of plaintiff's. No reason is given or appears for this exclusion except that such land is presently being used for a country club. As we have seen, such present use forms no basis for determining whether or not land is "benefited" by an improvement.

This case is different both quantitatively and qualitatively from *Giddings v. City of Pittsburg*, supra. There the omission of one lot which "might logically have been included in the district" was not considered evidence of bad faith; the only non-abutting lot included was owned in common with an adjoining lot which did abut, so that the entire improvement district was contiguous. Here, the bulk of a quarter section of arguably benefited land is omitted, and the non-abutting parcel is an enclave a half mile away from the improvement and the rest of the district.

The departure here from the requisites of the applicable statute and the underlying law justifying special assessments is, in our view, so radical as to amount to arbitrary action on the part of the city's governing body.

The judgement is reversed and the case remanded with directions to enter judgment for the plaintiff enjoining the levy of the special assessment.

APPROVED BY THE COURT.

FATZER, C. J., and KAUL, J., dissent.

O'CONNOR and PRAGER, JJ., not participating.