No. 47,294

BOARD OF EDUCATION OF UNIFIED SCHOOL DISTRICT NO. 345, SHAW-
NEE COUNTY, KANSAS, a Municipal Corporation, *Appellee,* v.
THE CITY OF TOPEKA, SHAWNEE COUNTY, KANSAS, *Appellant.*

(522 P. 2d 982)

Opinion filed May 11, 1974.

*Douglas C. Richards,* of Topeka, argued the cause, and *Dan E. Turner,*
City Attorney, was with him on the brief for the appellant.

*William E. Enright,* of Scott, Quinlan & Hecht, of Topeka, argued the cause, and *George A. Scott,* of the same firm, was with him on the brief for the appellee.

The opinion of the court was delivered by

KAUL, J.: This is an action to enjoin the levying of a special assessment by defendant city against the plaintiff's real estate for a portion of the costs of the establishment of a lateral sanitary sewer district and the construction of a sewer. The trial court granted an injunction and defendant city appeals.

As we view the case, the basic issue is whether plaintiff's evidence is sufficient to support the trial court's determination that the method employed by the city in levying the special assessments was arbitrary and unreasonable to the extent that palpable injustice resulted which justified injunctive relief.

Plaintiff school district's property is comprised of 28 acres, approximately 3 acres of which is used for classroom purposes.

On the recommendation of the city engineering department, the city laid out the sewer district boundaries and levied the assessments pursuant to the provisions of the General Improvement and Assessment Law of 1957 (G. S. 1957 Supp. 12-6a01, *et seq.* [now K. S. A. and K. S. A. 1973 Supp.]). Under the provisions of K. S. A. 12-6a08, pertaining to assessment plans, the city selected a per square foot plan for levying the assessment against all lots and pieces of land within the improvement district. The total cost of the project was $416,000.00 which, under application of the square foot plan, resulted in an assessment factor of approximately four cents per square foot. Utilizing this formula the assessment against plaintiff's land amounted to $38,537.46.

Relying on the testimony of a real estate broker, Loren Hohman, a witness for plaintiff, the trial court found that all properties within the benefit district were not similarly benefited and specifically that one property identified by Hohman as the Reibstein tract, was enhanced in value over three hundred percent; whereas plaintiff's land was increased in value only twenty percent. On this evidence the trial court found that the use of the square foot assessment plan was unreasonable and failed to meet the requirements of 12-6a08. While the trial court made extensive findings, its judgment rests on Hohman's testimony concerning the properties of plaintiff and Reibstein. Other than a general statement that some areas in the district benefited more than plaintiff's

property—Hohman's testimony was confined to the Reibstein and plaintiff properties.

On appeal the city contends the trial court erred in admitting evidence of the percentage use of the school district's property and evidence of its benefit from the lateral sewer in proportion to its costs or in relation to the benefits and costs of other undeveloped properties in the district. These contentions are aimed at the admission of the testimony of Dr. Bruce Henoch, superintendent of plaintiff school district, and Hohman. Henoch's testimony consisted largely of a description of the school buildings, the school grounds and school enrollment trends. His testimony concerning the present use of the school property was relevant. Neither do we find Hohman's testimony to be irrelevant; however, we give it a much different effect than that ascribed to it by the trial court.

The substance of plaintiff's contentions on appeal appears in specifications Nos. 3, 4 and 5 which read as follows:

"3. The trial court erred in finding certain properties and commercial tracts in the District were benefited materially and substantially more than the plaintiff's properties by the installation of the Lateral Sanitary Sewer.

"4. The lower Court erred in finding that the defendant's method of apportionment and assessment, i. e., assessing the cost equally per square foot against all lots and pieces of land within the improvement district, resulted in palpable injustice and in finding that the burdens imposed thereby were entirely disproportionate to the benefits received.

"5. The trial court erred in finding that the utilization of the square foot assessment plan in the instant case failed to satisfy the statutory requirements that the apportionment be fair and reasonable."

As we have previously indicated, City Engineer Terhune testified that he had recommended that the city proceed under 12-6a01, et seq. In an affidavit filed in support of city's motion for summary judgment Terhune stated that the assessments were formulated under that portion of 12-6a08 which expressly allows the use of the square foot method of assessment, which in his opinion was an equitable method of assessment within the improvement district, particularly between residentially and educationally used properties. K. S. A. 12-6a08 referred to by engineer Terhune reads as follows:

"The portion of the cost of any improvement to be assessed against the property in the improvement district as determined in section 12-6a04 of the General Statutes Supplement of 1957, as amended, shall be apportioned against said property in accordance with the special benefits accruing thereto by

reasons of such improvement. Said cost may be assessed equally per front foot or per square foot against all lots and pieces of land within such improvement district or assessed against such property according to the value of said lots and pieces of land therein, such value to be determined by the governing body of said city with or without regard to the buildings and improvements thereon or said cost may be determined and fixed on the basis of any other reasonable assessment plan which will result in imposing substantially equal burdens or shares of the cost upon property similarly benefited. The governing body may from time to time determine and establish by ordinance reasonable general classifications and formulae for the apportionment of the cost between the city and the area to be assessed, and the methods of assessing the special benefits, for various classes of improvements."

In order to put the issues raised herein in proper perspective we deem it necessary to consider the overall scope and general legislative intendment to be gleaned from the General Improvement and Assessment Law of 1957 ( G. S. 1957 Supp., now K. S. A. and K. S. A. 1973 Supp. 12-6a01 to 12-6a18, incl.), hereafter referred to as the 1957 Act. Several sections have been amended since 1957, but none of the amendments are pertinent to the issues herein. Since its enactment proceedings under the 1957 Act have been considered by this court in two cases ( *Snyder Realty Co. v. City of Overland Park*, 208 Kan. 273, 492 P. 2d 187 and *Giddings v. City of Pittsburg*, 197 Kan. 777, 421 P. 2d 181). While both of the cases mentioned dealt primarily with the composition of the improvement districts in each case, much of what was said therein concerning the general import of the 1957 Act, bears upon the central problem in the instant case.

The 1957 Act, under the provisions of section 12-6a02 coupled with the definitions set forth in 12-6a01, grants broad authority for undertaking all types of municipal improvements initiated either by petition or by a resolution of the city governing body as to the advisability of the proposed improvement. Obviously, with respect to procedure the Act is intended to be complete within itself. It is declared to be a complete alternative to all other methods provided by law whereby the governing body of any city may undertake any improvements or municipal works. In this regard section 12-6a02 reads in pertinent part:

"As a complete alternative to all other methods provided by law, the governing body of any city is hereby authorized to make, or cause to be made, municipal works or improvements which confer a special benefit upon property within a definable area of the city and may levy and collect special assessments upon property in the area deemed by the governing body to be benefited by such improvement for special benefits conferred upon such property by any

such municipal work or improvement and to provide for the payment of all or any part of the cost of the work or improvement out of the proceeds of such special assessments as hereinafter provided. . . ."

The aspect of the Act as a complete alternative to other statutory methods was recognized and given effect by this court on the first appearance of the Act before us in *Giddings v. City of Pittsburg,* supra.

Section 12-6a04 contains provisions relating to notice and hearing, provides for a resolution determining advisability and under subsections 2 (*d*) and (*e*) requires that notice be given of the extent of the proposed improvement district to be assessed and the proposed method of assessment.

Section 12-6a05 provides further limiting safeguards with respect to a hearing on the advisability of any improvement. Section 12-6a06 provides for the procedure in adopting the resolution of authorization and prescribes the method for lodging protests. Sections 12-6a08, 12-6a09 and 12-6a10 deal with the assessment plan, assessment rolls, including provisions for notice and hearing and objections and the levying of assessments.

In the instant case plaintiff raises no error or irregularity regarding the procedural steps in the course of the proceedings. We are not informed whether protests or objections were lodged along the way. The record indicates the city carefully followed the procedures outlined in the various sections of the Act which we have mentioned. On May 16, 1967, the city adopted Resolution No. 1150 declaring a need for a lateral sewer in accordance with the provisions of 12-6a04 and in conformance with subsection (1) (*e*) announced the proposed method of assessments—"Area basis equally per square foot contained within each lot, parcel or tract of land within the improvement district." Resolution No. 1150 was followed by the adoption on May 22, 1967, of Resolution No. 1151—the Resolution of Authorization—and in compliance with the statute the proposed method of square foot assessment was again spelled out. Finally, on October 8, 1971, in accordance with 12-6a09 the city adopted Ordinance No. 13152 apportioning and levying the special assessments and establishing the assessment rolls. The method of assessment was again stated.

We are convinced from our examination of the proceedings, coupled with the testimony of Engineer Terhune, that the boundaries of the benefit district were established in the first instance so

as to include only tracts and parcels of land which would be similarly benefited by the availability of the lateral sewer. On this point Terhune's testimony is narrated as follows:

". . . The boundaries of lateral sanitary sewer district number 424 were determined by ascertaining if a particular piece of property had the availability of lateral to it and if so, it would be included in the district. . . ."

Thus, it was established that insofar as availability of the lateral sewer for use, all tracts included within the district were similarly situated as distinguished from the situation in the case of *Hurley v. Board of County Commissioners*, 188 Kan. 60, 360 P. 2d 1110, which will be discussed hereafter. With respect to plaintiff's land the trial court found:

"There are no physical or topographical defects in plaintiff's properties which would create any problem in receiving full utilization of the sewer."

We turn now to the testimony of real estate broker Hohman, upon which the trial court based its decision. Hohman testified that plaintiff's and the Reibstein tracts were both of the approximate value of $2,500 an acre immediately prior to the construction of the sewer. Thus, if the assessment method selected by the city had been according to the value of the tracts, which is also a permissible method under 12-6a08, the assessments against plaintiff's land and the Reibstein tract would have been proportionally the same as that arrived at by the square foot method. With respect to increase in value resulting from construction of the sewer, Hohman testified plaintiff's land increased in value from $2,500 to $3,000 or $500 per acre. Concerning the Reibstein tract, Hohman testified it was worth $2,500 per acre or $50,000.00 prior to the construction of the sewer. Concerning the increase in value of the Reibstein tract following installation of the sewer, Hohman's testimony was:

"Q. All right. I will ask you, sir, what your opinion might be as to the market value of that real estate immediately after the construction and installation of the sewer line.

"A. Well, it's not only my opinion, but it's a known fact, that property sold for $176,000 after the sewer was installed."

When questioned further concerning plaintiff's property, Hohman's testimony appears as follows:

"Q. Is there anything about this school tract which is inherently incompatible with a residential use or a motel use or a commercial use at some future date, 50 years in the future? Is there anything about physical terrain or topography—

"A. No.

"Q. —that makes this tract such that it could never be used for something other than for school?

"A. No, it could easily be used for something else other than a school."

Following Hohman's verbatim testimony this narrative excerpt is reproduced in the record:

"The witness felt that if the school grounds were vacated, the only other use which the school ground would be strictly residential because of its limited access to the highway."

While Hohman concedes there is nothing inherently incompatible with plaintiff's property for residential, motel or commercial use in the future, he, nevertheless, restricts its use to residential because of limited access to the highway. Hohman's testimony in this regard is not only inconsistent within itself, but incompatible with that of plaintiff's superintendent Dr. Henoch who testified that 6.8 acres of plaintiff's land is presently used as a parking lot to accommodate the football field. If accessible for a football crowd requiring a 6.8 acre parking lot it must be inferred plaintiff's property would have the accessibility necessary for apartment use. While Hohman's testimony concerning highway accessibility might foreclose the possibility of commercial development of plaintiff's land under present conditions it does not appear that plaintiff's land, if usage for school purposes were abandoned, would be unadaptable for apartment use which we are informed is the development of the Reibstein tract.

Viewing the whole of Hohman's testimony in the light most favorable to plaintiff we are convinced that his opinion was based essentially on the present use of plaintiff's land. This approach flies in the face of the basic principle threaded through our decisions dealing with special assessments, regardless of which of the several statutory proceedings is used, that benefit from the improvement is presumed to inure to the property itself rather than to the particular use being made of it at the time. The test is not whether the property is enhanced in value for the particular purpose for which it is being devoted at the time of the assessment, but whether the property is enhanced in value for any purpose. (*Snyder Realty Co. v. City of Overland Park*, supra; *Mullins v. City of El Dorado*, 200 Kan. 336, 436 P. 2d 837; and *Giddings v. City of Pittsburg*, supra.)

Based on Hohman's testimony the trial court found:

"The uncontroverted evidence discloses that all properties within the benefit district were not similarly benefited and that plaintiff's properties were

enhanced in value 20 per cent while the Reibstein tract was increased in value over 300 per cent by reason of the installation of the sewer."

On the other hand, with respect to the condition of plaintiff's land, as we have previously noted, the trial court found there were no physical or topographical defects which would bar full utilization of the sewer.

It appears the trial court in reaching its conclusion tested the benefit to plaintiff's property on the basis of its use for educational or residential purposes rather than on its enhancement in value for any purpose. The record indicates that out of more than 400 parcels levied upon plaintiff latched on to one tract that had been sold and employed this one isolated sale in an attempt to demonstrate that benefits were so disproportionate as to justify injunctive relief. According to Hohman's testimony the value of plaintiff's property and the Reibstein tract were equal—$2,500 per acre at the time of the assessment. The record indicates, as the trial court found, that there was nothing concerning plaintiff's property that prevented full utilization of the sewer. In other words, plaintiff's property was as adaptable to utilization of the sewer as was the Reibstein tract at the time the assessment method was proposed. The sole fact that the Reibstein tract, apparently because of a change in use, was later sold at a price much greater than the value at the time of the selection of the assessment method does not operate so as to create disproportionate benefits resulting in palpable injustice.

The factual situation in the instant case is not analogous to that in *Hurley v. Board of County Commissioners,* supra, wherein a per acre area assessment method was found to be palpably unjust because plaintiff's land was shown to be rough, rocky, unimproved and located a mile and one-half from the sewer as opposed to other tracts within the district which were already developed for commercial and residential use.

Neither are the facts herein comparable to the facts in *Strickland v. City of Wichita,* 203 Kan. 954, 457 P. 2d 162, wherein a square foot method based on zoning was held to be an arbitrary assessment where the appraisers based the appraisal solely on zoning without regard to actual land values despite wide discrepancies in the value of lands within the same zoning. Evidence in the instant case showed the per acre values of plaintiff's and Reibstein's land to be equal at the time the square foot method was selected.

Although, as we have indicated, the 1957 Act provides a complete alternative to other methods of creating benefit districts and levying special assessments, as in proceedings under other statutes, the questions of the existence and extent of special benefits are questions of fact to be determined by the authorized governing body. The exercise of the governing body's judgment in this regard is presumed to be legal, equitable and just and only if palpable injustice results from the method applied so that the burden imposed is entirely disproportionate to benefits received will courts intercede. (*Mullins v. City of El Dorado*, supra.)

The square foot plan of assessment is one of those specifically authorized by 12-6a08, it was selected in May 1967 by the city governing body based upon the premise that there would be comparable utilization of the sewer facilities by the tracts included within the benefit district in the composition thereof as laid out by the city engineer. The fact that one tract, equal in per acre value to that of plaintiff's land at the time, was later sold at a greatly enhanced price is not sufficient to sustain the plaintiff's burden in attempting to overcome the action of the city governing body. Applying the principle that benefits inure to the property itself rather than to the present particular use thereof it cannot be said that the two properties themselves were not similarly benefited.

Our holding herein is not to be construed as eroding the well-established principle that the judgment of a governing body, though the exercise thereof is authorized by statute, may not be exercised arbitrarily, unreasonably or fraudulently. This admonition, so often iterated in our cases, is reasserted in substance in the language of 12-6a08 requiring that equal burdens or shares of costs be imposed upon property similarly benefited. Our decision herein is limited to the effect that a showing by a plaintiff property owner that of the more than 400 assessed tracts included in a benefit district, one tract, which was initially of equal per acre value to that of plaintiff's, was subsequently sold at a greatly enhanced price is insufficient to establish that the assessment plan used imposed a burden entirely disproportionate to the benefits inuring to plaintiff's land and other lands similarly situated so as to result in palpable injustice.

The judgment is reversed.