No. 47,780

Lloyd M. Davies and Audrey M. Davies, et al., *Appellants,* v. City of Lawrence, Kansas, a Municipal Corporation, *Appellee.*

(545 P. 2d 1115)

Opinion filed January 24, 1976.

*Dean Burkhead,* of Riling, Burkhead & Rhudy, Chartered, of Lawrence, argued the cause, and was on the brief for the appellants.

*Milton P. Allen,* of Allen & Cooley, of Lawrence, argued the cause, and was on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is an appeal from a judgment wherein the trial court rejected the appellants' protest petition and refused to enjoin the City of Lawrence, Kansas, from constructing sidewalks and assessing the costs against all property within a benefit district created by the City pursuant to K. S. A. 12-6a01, *et seq.*

The facts are stipulated. The City of Lawrence, Kansas, (defendant-appellee) is a municipal corporation duly organized and existing under the laws of the State of Kansas and classified as a City of the first-class. Lloyd M. Davies and the other plaintiffs-appellants were, as of June 26, 1973, resident and non-resident owners, or both, of property located within a benefit district created by the City of Lawrence (hereafter the City) by Resolution No. 3886 on February 20, 1973.

This resolution directed that certain sidewalks be installed and it created a benefit district to be assessed for the cost of the installation. The benefit district covers that part of the City of Lawrence lying east of Iowa Street, south of 19th Street, west of Louisiana Street, and north of 23rd Street, totaling 10,772,806 square feet. The area covered by the benefit district contained three schools owned by Unified School District 497, and other property owned by the City of Lawrence, the State of Kansas and the United States Government, for a total of 2,630,996 square feet.

Under the plan proposed by the City property in the benefit district could be assessed without having a sidewalk constructed in front of the property. The proposed sidewalks, referred to by the appellants as a skeletal system, were to be built only on certain property and on one side of certain streets. These streets were selected in accordance with two traffic surveys identifying the streets with heavy automobile traffic. For clarity a map is included

to show the location of the sidewalks. The heavy dark lines around the map show the benefit district's boundaries. On the northern boundary of the benefit district, along the south side of 19th Street, a sidewalk is planned, hence two dark lines are shown. Existing sidewalks are shown with a dotted line. With the exception of two lots located near Centennial School and surrounded by heavy lines (and the boundary line on 23rd Street and Iowa Street where no sidewalk is proposed), all other heavy lines indicate the proposed sidewalks. Thus the proposed sidewalks generally run east to west along 19th Street and 21st Street, and run north to south along Ousdahl Street, Naismith Drive and Alabama Street.

Private landowners who had existing sidewalks, built at their own expense, were excluded from the benefit district if the sidewalks conformed to the City code. The two landowners with satisfactory sidewalks which were excluded from the benefit district are found near Centennial School, one immediately west and one north of the school. Their lots are surrounded by heavy lines on the map.

Unified School District 497 had previously paid for the existing sidewalks abutting Schwegler and Centennial Schools. These areas belonging to the schools were not excluded from the benefit district. Lawrence High School had an existing sidewalk along Louisiana Street and along approximately one-fourth of its boundary abutting 19th Street. These sidewalks were paid for by the school district. As the map shows, more sidewalks were proposed along the west three-fourths of the high school property abutting 19th Street, and along the south side of its property abutting 21st Street.

The total estimated cost of the improvement was $85,232.00. The total cost of construction was to be assessed against the owners of the affected property in the improvement district on the basis of the shortest front footage, to be known as "adjusted front feet." On an adjusted frontage basis, the estimated cost of the sidewalks would total $1.38 per adjusted front foot. On a square foot basis the estimated cost could be $.008 per square foot. By way of example a residential lot 80 feet by 140 feet would, on an adjusted front foot basis, pay $110.40 for sidewalks. On a square foot basis, the same residential lot would pay $89.60. The parties agree that the total assessment on a square foot basis for Unified School District 497 at $.008 per square foot would equal $16,459.26. On an adjusted front foot basis the school district would pay only $2,640.00.

On March 19, 1973, a protest petition against the installation of sidewalks was timely filed with the City of Lawrence pursuant to K. S. A. 12-6a06, which provides:

". . . The improvement shall not be commenced if, within twenty (20) days after publication of the resolution ordering the improvement, written protests signed by *both* fifty-one percent (51%) or more of the resident owners of record of property within the improvement district *and* the owners of record of more than half of the total area of such district are filed with the city clerk. . . ." (Emphasis added.)

The appellee, City, accepted 322 signatures, 304 resident owners and 18 non-resident owners (53.2% of the resident owners in the benefit district), who protested the benefit district. However the 322 signatories protesting the benefit district represented only 4,480,520 square feet within the benefit district, less than half the area in question. (The area of the benefit district being found by the City to include both public and private lands.) If all the governmental land were excluded from the benefit district area, the 322 signatories would represent more than one-half the area within the benefit district (4,480,520 square feet of the 8,141,810 square feet remaining after the governmental lands had been excluded from the benefit district).

The undisputed facts in this case subject the provisions of K. S. A. 12-6a01, *et seq.*, to a major test where sidewalk improvement is undertaken by a municipality. The basic issue here presented is one of first impression.

The appellants enumerate thirteen points of error which are so interwoven that the appellants in their brief discuss them as one.

The overall scope and general legislative intendment from the general improvement and assessment law of 1957 (L. 1957, ch. 99, §§ 1-18, now K. S. A. 12-6a01 to 12-6a18, inclusive) was discussed in *Board of Education v. City of Topeka,* 214 Kan. 811, 522 P. 2d 982. Since its enactment proceedings under the 1957 Act were previously considered by this court in *Snyder Realty Co. v. City of Overland Park,* 208 Kan. 273, 492 P. 2d 187, and *Giddings v. City of Pittsburg,* 197 Kan. 777, 421 P. 2d 181. Those cases dealt primarily with the composition of improvement districts relative to street improvements. In *Board of Education v. City of Topeka,* supra, the court was concerned with an assessment by the square foot method for the construction costs of a lateral sanitary sewer system within the benefit district.

In discussing the provisions of the 1957 Act the court said in *Board of Education v. City of Topeka,* supra:

"The 1957 Act, under the provisions of section 12-6a02 coupled with the definitions set forth in 12-6a01, *grants broad authority* for undertaking *all types of municipal improvements* initiated either by petition or by a resolution of the city governing body as to the advisability of the proposed improvement. Obviously, with respect to procedure the Act is intended to be complete within itself. *It is declared to be a complete alternative to all other methods* provided by law whereby the governing body of any city may undertake *any improvements or municipal works. . . ."* (Emphasis added.) (p. 814.)

Insofar as pertinent to this appeal § 12-6a02 reads in part:

"As a complete alternative to all other methods provided by law, the governing body of any city is hereby authorized to make, or cause to be made, municipal works or improvements which confer a special benefit upon property within a definable area of the city and may levy and collect special assessments upon property in the area deemed by the governing body to be benefited by such improvement for special benefits conferred upon such property by any such municipal work or improvement and to provide for the payment of all or any part of the cost of the work or improvement out of the proceeds of such special assessments as hereinafter provided. Such work or improvements *may* include the following *without limitation because of enumeration:*

\* \* \* \* \*

"(*b*) To open, widen and extend streets and otherwise *to improve* paving and other surfacing, gutters, curbs, *sidewalks,* crosswalks, driveway entrances and structures, drainage works incidental thereto, and service connections from sewer, water, gas and other utility mains, conduits, or pipes necessarily lying within curb lines." (Emphasis added.)

On the first appearance of this Act before the court in *Giddings v. City of Pittsburg,* supra, the aspect of the Act as a complete alternative to other statutory methods was recognized and it was found by the court not to (*a*) violate the due process provisions of the Fourteenth Amendment; (*b*) constitute an impermissible delegation of legislative power; or (*c*) fail to provide a sufficient standard for the application of its provisions.

Arguably the provisions of the Act above quoted (12-6a02 [*b*]) cover new construction of sidewalks. The definitions of "improvement" and "to improve" in K. S. A. 12-6a01 include the construction of new facilities made under authority of the Act. The enumeration undertaken by the legislature in 12-6a02, *supra,* is "without limitation because of enumeration." The broad scope of this language was recognized in *Board of Education v. City of Topeka,* supra, where it was said the Act grants broad authority for undertaking

all types of municipal improvements initiated either by petition or by a resolution of the city governing body.

Under the circumstances it would be a strained construction of the Act to say sidewalk improvements undertaken by the city governing body are authorized only when incidental to street improvements. Even general statutory authority for street improvements has been said to authorize sidewalk improvements. In 13 E. Mc-Quillin, The Law of Municipal Corporations, § 37.18 (3rd ed., 1971 rev. ed., p. 62) the general rule is stated:

"Power to grade and lay sidewalks is sometimes expressly conferred by charter or statute. But ordinarily in this relation the word 'street' is held to include sidewalks as parts thereof, and hence power to improve streets includes authority to improve sidewalks. . . ."

When consideration is given to the repeal of various statutory provisions pertaining to sidewalks (K. S. A. 13-1008 [b]; K. S. A. 14-564; K. S. A. 14-402; and K. S. A. 15-727) since the 1957 enactment, it is apparent the legislature intended to include the improvement of sidewalks in K. S. A. 12-6a01, et seq.

In the instant case the City governing body of Lawrence determined that property located within the described benefit district should be assessed equally on the basis of adjusted front feet— that being the shortest front footage of each tract of property within the benefit district. The assessment is designed to cover the total cost of construction of the skeletal sidewalk system described and lying within the benefit district.

It is a basic contention of the appellants that the properties within the described benefit district are not equally benefited, or benefited at all, by the construction of the skeletal sidewalk system. It is therefore argued the assessment on an adjusted front footage basis of all lands within the benefit district was unjust, unreasonable, discriminatory and grossly disproportionate to the benefits received, and that the trial court erred in denying injunctive relief.

To resolve this basic issue before the court it is well to reiterate some of the basic law heretofore established by our decisions. In *State Highway Commission v. City of Topeka*, 193 Kan. 335, 393 P. 2d 1008, special assessments were defined in distinguishing them from general property taxes as follows:

"A special assessment is in the nature of a tax levied upon property according to the benefits conferred on the property. The whole theory of a special assessment is based upon the doctrine that the property against which it is levied derives some special benefit from the improvement; that while

the property is made to bear the cost of the improvement, it or its owner suffers no pecuniary loss thereby since the property is increased in value by an amount at least equal to the sum it is required to pay. Generally speaking, the difference between a special assessment and general taxes is that a special assessment can be levied only on land, is based wholly on benefits conferred, and is exceptional both as to time and locality. (1 Cooley [4th Ed.], The Law of Taxation, § 31, p. 105; 14 McQuillin [3rd Ed.], Municipal Corporations, § 38.73, pp. 200, 201.)" (pp. 337, 338.)

A basic principle threaded throughout our decisions dealing with special assessments, regardless of which of the several statutory proceedings is used, is that benefit from the improvement is presumed to inure to the property itself rather than to the particular use being made of it at the time. The test is not whether the property is enhanced in value for any particular purpose for which it is being devoted at the time of the assessment, but whether the property is enhanced in value for any purpose. (*State, ex rel., v. City of Topeka*, 201 Kan. 729, 443 P. 2d 240; and *Board of Education v. City of Topeka*, supra, and authorities cited therein.)

The authority for making a special assessment in a case such as this is found in the Act which provides that the benefit district should include the "property in the area deemed by the governing body to be benefited by such improvement for special benefits conferred upon such property." (K. S. A. 12-6a02.)

A challenge to the inclusion of property in a benefit district was made in *Snyder Realty Co. v. City of Overland Park*, supra. The court there recognized that citizens challenging the action of the governing body of a city must shoulder a heavy burden. The rules have been summarized in *Giddings v. City of Pittsburg*, supra at 777, as follows:

"In defining the boundaries of an improvement district, the members of the governing body of a city are bound to act fairly and in good faith.

"It is a general rule of law that courts will not enjoin action undertaken by city governments unless a clear abuse of discretion has been shown.

"Municipal authorities are vested with broad discretion in establishing an improvement district pursuant to K. S. A. 12-6a04, and in levying assessments against property located therein, and their determination is not subject to review in the absence of a showing of fraudulent or arbitrary conduct." (Syl. ¶¶ 3, 4, 5.)

In the opinion of the *Giddings* case, it was said:

". . . The criterion, of course, is whether the area to be assessed, and hence to be included in the improvement district, will be benefited by the improvement. Such is the standard by which the sufficiency of the petition is to be gauged and the improvement district established. It is true that the

determination of whether the area will be benefited demands the use of judgment on the part of the governing body. It is true, also, that such judgment may not be exercised arbitrarily. Nonetheless, a city is not given *carte blanche* to approve *any* petition for street improvements or to establish *any* improvement district to pay therefor. The standards for doing so are set by law and must be followed." (p. 786.)

The statute under which the assessment was made in the instant case sheds additional light on the subject. K. S. A. 12-6a08 provides:

"The portion of the cost of any improvement to be assessed against the property in the improvement district as determined in K. S. A. 12-6a04, *shall be apportioned against said property in accordance with the special benefits accruing thereto by reasons of such improvement.* Said cost may be assessed equally per front foot or per square foot against all lots and pieces of land within such improvement district or assessed against such property according to the value of said lots and pieces of land therein, such value to be determined by the governing body of said city with or without regard to the buildings and improvements thereon *or said cost may be determined and fixed on the basis of any other reasonable assessment plan which will result in imposing substantially equal burdens or shares of the cost upon property similarly benefited.* . . ." (Emphasis added.)

As we construe the foregoing section of the statute the legislature has enjoined upon the governing body of a city the obligation to assess the property in the benefit district by *imposing substantially equal burdens or shares of the cost* upon such property. This admonition applies to the various methods which the governing body is authorized to select for the apportionment of the costs.

In our opinion the benefit district created, and the assessment made by reason thereof, failed to comply with the Act. A "substantially equal" burden is not imposed upon property included within the benefit district.

By making reference to the map it will be noted the sidewalks in the benefit district are planned only on certain selected streets and are to be constructed only on one side of those streets. Yet the proposed cost of the sidewalk is to be spread equally throughout the district on an adjusted front foot basis without regard to the lots' proximity to the proposed sidewalk. Thus, property lying many hundreds of feet from a sidewalk could conceivably pay more of the cost of the sidewalk than a property located directly on an abutting sidewalk.

In our opinion a proposed skeletal sidewalk system, as here, in a designated benefit district cannot be equated to a benefit district designated for the construction of a sanitary sewer main. (See,

*Hurley v. Board of County Commissioners,* 188 Kan. 60, 360 P. 2d 1110.)

The legislative history regarding the assessment of costs of sidewalk improvements by municipalities of this state cannot be ignored.

All prior enactments by the legislature authorizing assessments for the construction of sidewalks required that the costs be assessed to the property *abutting on such sidewalks.* (K. S. A. 12-1809; K. S. A. 13-1008a, K. S. A. 13-1008d and K. S. A. 13-1008f; K. S. A. 14-402 [Repealed, L. 1963, ch. 105, § 1]; and K. S. A. 15-727 [Repealed, L. 1959, ch. 82, § 1] assessed 50% of the sidewalk construction cost to the city at large and the balance to the property abutting the sidewalk.) Our previous cases indicate special assessments for sidewalk improvements were always levied against the abutting property owners. (*Parker v. Challiss,* 9 Kan. 155; *Challiss v. Parker, Treasurer,* 11 Kan. 384; *City of Lawrence v. Killam,* 11 Kan. 499; *City of Wyandotte v. Zeitz,* 21 Kan. 649; *Sloan v. Beebe,* 24 Kan. 343; *City of Garden City v. Trigg,* 57 Kan. 632, 47 Pac. 524; and *Heller v. City of Garden City,* 58 Kan. 263, 48 Pac. 841.)

The purpose of sidewalks is to provide a place for pedestrians to travel. The argument of the City, that sidewalks are to be constructed only on those streets which disclosed the heaviest vehicular traffic in the benefit district, is refuted by the fact that both Iowa and 23rd Streets are public highways and have far more vehicular traffic than do the streets upon which sidewalks are proposed. The properties fronting Iowa Street and 23rd Street derive little or no benefit from the proposed sidewalks and certainly do not derive the benefit that properties abutting on the sidewalks would receive. (See, *Norwood v. Baker,* 172 U. S. 269, 43 L. Ed. 443, 19 S. Ct. 187.)

A second indication that unequal burdens are imposed upon property owners within the benefit district is the exemption from the district of those properties where sidewalks have previously been installed. There is nothing in the Act here under consideration which authorizes the exemption of these properties from a benefit district. The policy of the City in exempting privately owned properties that already have sidewalks constructed which comply with the City code implicitly recognizes that the costs of the sidewalks should be assessed against the abutting property owners.

The City did not exempt the school district's property where sidewalks surround those properties.

On the one hand, the City argues the two grade school properties (Schwegler and Centennial) will derive unusual benefits from actual use of the proposed sidewalks because a large portion of the pedestrians in these areas will most likely be children on their way to school or returning therefrom. It is argued these youngsters will be better able to make this journey safely by foot and traffic congestion at the schools themselves, which would otherwise arise from parents transporting children by car, will also be alleviated. Such unusual benefits from actual use it is argued would surely make it reasonable to include the school property within the improvement district. On the other hand, the City argues the sidewalk improvements made by those owners of property exempt from the benefit district by reason of existing sidewalks installed entirely at their own expense, are only now being made whole for their contributions to the sidewalk system. The City contends there is no surplus value on which to draw for assessments.

The City fails to recognize that it is not the particular use being made of the property at the time of the assessment which is material, but whether the property is enhanced in value for any purpose by reason of the improvement.

The City's argument also overlooks the fact that owners of property within the benefit district fronting upon streets where no sidewalks are proposed may desire sidewalks extending on the front of their lot. The provisions under which they may proceed are contained in Article 18, Chapter 12 of the Kansas Statutes. Under this method of securing sidewalks the cost of construction must be assessed *against the property abutting the sidewalk.* (K. S. A. 12-1809.) These property owners, whom the City proposes to assess a portion of the costs of the proposed sidewalks which do not abut their property, would again be assessed for the costs of sidewalks. The second time they would be assessed the total cost of the sidewalk abutting their property.

While the City's decision to assess the total cost of the proposed sidewalk improvement within the benefit district on an adjusted front foot basis appears to be authorized by K. S. A. 12-6a08, it will not result in imposing substantially equal burdens or shares of the cost upon the property in the benefit district. This decision

on the part of the governing body of the City reduced the school district's assessment from $16,459.26 to $2,640.00. Light is found on the subject in *Board of Education v. City of Topeka*, supra, where the City governing body assessed the costs of the establishment of a lateral sanitary sewer district and the construction of a sewer by selecting a per square foot plan for levying the assessment against all lots and pieces of land within the improvement district. There the improvement district included school property. As applied to school property within the benefit district the court there upheld the assessment on a square foot basis and elaborated upon application of the rule—that benefit from the improvement is presumed to inure to the property itself rather than to the particular use being made of it at the time. (*Board of Education v. City of Topeka*, supra at 817-819.)

Based upon the facts in this case we find, as a matter of law, the proposed skeletal sidewalk system within the benefit district described by the City governing body, and the special assessments levied by reason thereof, constitute a departure from the requirements of the applicable statutes and the underlying law justifying special assessments. It will not result in imposing substantially equal burdens or shares of the cost upon all property within the benefit district, and, in our view, it is such a radical departure as to constitute arbitrary action on the part of the City governing body.

The foregoing disposition of the case makes it unnecessary to determine points raised concerning the validity of the protest filed with the City in this case.

The judgment of the lower court is reversed.