(673 P.2d 125)

No. 55,034

MARVIN D. WHITEHEAD, *et ux., et al., Appellee,* v. THE CITY OF FREDONIA, a second class city, *Appellant.*

Opinion filed December 22, 1983.

*Steven W. Rogers,* of Fredonia, for the appellant.

*David K. Clark,* of Fredonia, for the appellee.

Before SPENCER, P.J., JEROME HARMAN, C.J. Retired, assigned, and STEVEN P. FLOOD, District Judge, assigned.

HARMAN, C.J. Retired: Here the city of Fredonia appeals from

an order permanently enjoining it from levying and collecting special assessments on property within a newly created sewer improvement district.

In April, 1981, the city created the new sewer district, comprised of twelve separately owned tracts of land, and, simultaneously it annexed four of the tracts which had not previously been within the city limits. Initially, it was hoped the federal government would pay 80 percent of the cost of the improvement but this didn't materialize. The sewer system was constructed and the city enacted an ordinance levying 80 percent of the costs upon the twelve tracts of land. The city at large was to pay the remainder. Thereafter, the landowners filed this suit.

The landowners challenged the special assessment on two grounds: First, that the city failed to follow the requisite statutes governing annexation and creation of sewer districts; second, that the city acted arbitrarily in that the assessments did not enhance the value of the property and resulted in burdens upon the property greater than any benefit. The trial court held against the landowners on the first issue but sustained their position as to the second.

The trial court held an evidentiary hearing at which the landowners presented several witnesses. The city presented none. A real estate salesman of two years' experience opined that the improvement and resulting assessment resulted in no enhancement of value in the property for any purpose; he referred to an improvement district in Neodesha consisting of improved and vacant lots which ran into a problem in that lots were not selling because of the economy and the fact that the assessments increased the payments which would have to be made. He was not aware of any impact that government environmental protection agencies or boards of health might have upon property within cities but believed that the existence of any health regulations would not make the Fredonia sewer improvements more beneficial because these were older homes "already attached to a private sewer, septic tank system." He opined that the average value of the *houses* was about $15,000. A 74-year-old witness testified that his monthly income was about $730 and there were two others like him; others were younger and employed. He also testified that the area was once platted into smaller lots with a 60-foot wide street extending through, but the street was vacated

when the area was changed back to acreage and in the absence of reopened streets there was no way for further development.

On behalf of the city, its counsel stated that engineers had believed three adjoining tracts not included in the benefit district (veterinary hospital, sales barn and city park) could not be handled by the particular system contemplated, and that the twelve tracts in question were large ones, a number of acres each and not like a city lot; further, that the city at large assumed payment of 20 percent of the improvement cost even though it was not so obliged; and that every tract of land in Fredonia that has sewer available did at one time or another pay a special assessment to have that sewer constructed.

The trial court found the city's action to be arbitrary and capricious. Its findings and rationale included the matters proffered by the landowners and the fact that the first of ten annual assessments per tract will be $1,091.98 with declining payments each year thereafter, totalling $5,326.80 plus interest. (It did find the evidence failed to show discrimination by reason of the exclusion of the veterinary hospital, sales barn and city park.) The court commented that if there were no sewer or sanitary systems at all on the tracts then it could reasonably be inferred that the values of the land would increase at least as far as residential use is concerned. The court emphasized the existence of a private sewer septic tank system on the property.

The city here undertook to establish the sewer improvement district under the general improvement and assessment law (K.S.A. 12-6a01 *et seq.*), which provides a method of determining benefits accruing to property from municipal improvements and of levying special assessments against property within the benefit district to pay the cost of such improvements.

"The power of the courts under K.S.A. 60-907(*a*) to grant relief in matters of taxes and assessments imposed by the governing body of a municipality is confined to those situations where the action taken by the governing body is without authority, or permeated with fraud, corruption or conduct so oppressive, arbitrary or capricious as to amount to fraud." *Mullins v. City of El Dorado*, 200 Kan. 336, Syl. ¶ 1; 436 P.2d 837 (1968).

"The basis for making a special assessment for a local improvement is that the property against which the assessment is levied derives some special benefit from the improvement." 200 Kan. 336, Syl. ¶ 2.

"Ordinarily, the question of the existence and extent of special benefits resulting from a public improvement for which a special assessment is made is a question of fact to be determined by the governing body authorized to act in the

premises, and is considered conclusive on the property owners and the courts. Inherent in this rule is the requirement that an-assessment so made be fair, just and equitable. Only if palpable injustice results in applying the method of apportionment and assessment so that the burden imposed is entirely dispro-portionate to benefits received, will courts, under their equity power, intercede." 200 Kan. 336, Syl. ¶ 3.

"The action of municipal authorities in making a special assessment is pre-sumed to be legal, equitable and just, and the assessment is prima facie evidence of the regularity and correctness of all prior proceedings. In establishing grounds justifying intercession by the courts, a property owner has the burden of proof." 200 Kan. 336, Syl. ¶ 4.

In *Snyder Realty Co. v. City of Overland Park,* 208 Kan. 273, 276, 492 P.2d 187 (1971), it was stated that one undertaking to overturn a governing body's determination of the boundaries of an improvement district and of a method of assessment therefor under K.S.A. 12-6a01 *et seq.,* must shoulder a heavy burden of proof. This statement was referred to approvingly in *Davies v. City of Lawrence,* 218 Kan. 551, 558, 545 P.2d 1115 (1976).

"In determining special benefits accruing to property from a local improve-ment which has enhanced the value of property specially benefited, the benefit from the improvement is presumed to inure to the property itself rather than to the particular use being made of it at the time." *Board of Education v. City of Topeka,* 214 Kan. 811, Syl. ¶ 4, 522 P.2d 982 (1974).

See also *Davies v. City of Lawrence,* 218 Kan. 551, Syl. ¶ 3.

Recognizing that a different rule might be applicable where conduct amounting to fraud is shown, we note that improvement assessments which may aggregate more than the market value of the property have been upheld. *Mullins v. City of El Dorado,* 200 Kan. 336, Syl. ¶ 6; *Buckwalter v. Henrion,* 111 Kan. 781, Syl. ¶ 7, 208 Pac. 645 (1922).

The trial court's memorandum indicates that it relied heavily on the fact the property was already being served by a private sewer septic tank system. Both the city and the landowners agree this so-called system consists of nothing more than individual septic tanks separate and unconnected with each other. We need dwell little on this aspect. Suffice it to say, it is well known that problems not present in a modern sewer system do arise with respect to the capacity and ability of septic tanks safely to contain and dispose of waste materials, including much which is haz-ardous to a fresh water supply.

The trial court considered the income of the landowners, characterizing the latter as "rang[ing] from fully employed to

retired and drawing Social Security, with [one landowner] having as his sole income the sum of $730.00 per month." The court also took into account the amount of the ten declining annual assessments with relation to the value of the "houses" or "homes" of the landowners.

Summing up, it appears the landowners feel they should not have to help pay for the sewer system in view of their having septic tanks already in use. As implied by the city, one can only speculate if the city's actions were so bad, why did the landowners wait until after the sewer was completed to take legal action to keep from paying their part of the cost?

The problem is, as hereto stated, that the benefit of the improvement is presumed to inure to the property itself rather than to the particular use being made of it at the time. *Davies v. City of Lawrence,* 218 Kan. 551, Syl. ¶ 3; *Board of Education v. City of Topeka,* 214 Kan. 811, Syl. ¶ 4.

Here, it appears that too much focus was placed on the present use of the property, instead of on the benefit inuring to the property itself. The property was in fact once platted into lots with a street serving the interior. The property physically retains that potential. As contended by the city, it is difficult to understand how it is possible for a tract to decrease in value by reason of having access to a sanitary sewer system. Again, as pointed out by the city, the tract may be more difficult to sell on time payments because of the additional assessments but this does not diminish value for our purposes here. Nor is the income of the owner of the property a factor in establishing the value of the property, regardless of how appealing this approach may be in any individual situation.

It is plain that the trial court was looking narrowly at the present use of the property instead of at the benefit to the property itself. Throughout its memorandum decision, reference is made to present usage of the property. In summation of its conclusion respecting value of the property, the trial court again makes specific mention of "existing uses." Employment of this time frame contributes to the erroneous result.

Our conclusion is that the showing made by appellee landowners was inadequate to sustain their burden of showing arbitrary and capricious action on the part of the city. No clear abuse of discretion has been shown.

In their brief here, the landowners again urge that the city unlawfully proceeded with the annexation of four tracts simultaneously with the establishment of the sewer district. As stated, the trial court ruled against them on this issue. In the absence of a cross-appeal from this ruling, K.S.A. 60-2103($h$) precludes review of this matter.

The judgment is reversed with directions to enter judgment for appellant.