No. 42,881

OTTO J. KOERNER and ROSETTA A. KOERNER, *Appellants,* v. CITY OF WICHITA, a Municipal Corporation, and C. H. FUNK, Clerk of the City of Wichita, *Appellees.*

(378 P. 2d 42)

Opinion filed January 26, 1963.

*Otto J. Koerner*, of Wichita, argued the cause, and *Lee R. Meador* and *John B. Wooley*, both of Wichita, were with him on the briefs for appellants.

*Eugene L. Pirtle*, of Wichita, argued the cause and *Fred W. Aley*, of Wichita, was with him on the briefs for the appellees.

The opinion of the court was delivered by

JACKSON, J.: The appellants brought the within suit to declare unlawful and void an assessment for the sanitary sewer connecting their home to the sewage system of the City of Wichita and asking that it be enjoined. The trial court sustained a demurrer to the plaintiffs' evidence and gave judgment for the city. Hence, this appeal.

The statutes followed by the city in constructing the lateral sewer here involved were G. S. 1949, 12-608 and section 13-1013. The plaintiffs stress the fact that all lots involved in this assessment were residences and that each received the same benefit; that is, they were each connected to a sanitary sewer. In a certain sense, it could be argued that such idea is a valid and logical conclusion. But the matter must be decided by examining the statutes involved in the appraisement of the property.

In section 12-608, we quote that part directing the appraisers to act:

"It shall be the duty of said appraisers, within five days after being notified of their appointment, to proceed to appraise such lots and pieces of land as may be designated by the council or commission, after having taken and subscribed an oath to make a true and impartial appraisement, which appraisement shall be returned to the city council or commission at its first meeting after the same shall have been completed."

In section 13-1013, we find the following language:

"Intercepting, main and lateral sewer districts shall be created and defined by ordinance and the cost of all such sewers, intercepting, main and lateral, shall be assessed against all lots and pieces of land in the districts as created and such special assessment shall be levied by the city and certified by the city clerk to the county clerk to be placed on the tax rolls for collection, subject to the same penalties and collected in like manner as other taxes. The procedure used by the city in determining the valuation to be placed on lots and pieces of land in sewer districts, for the purpose of special assessments to pay for the cost of constructing sewers, shall be the same as provided for determining the valuation of lots and pieces of land for the purpose of special assessments to pay for the cost of paving streets in cities of the first class."

Considering these statutes, it would seem to us that the appraisers are merely ordered to set the value of the property without improve-

ments, and that the most valuable piece of property will no doubt be assessed for the most tax.

Plaintiffs' witnesses who testified included only officers of the city, an appraiser and an owner of the addition to the city in which plaintiffs' lot is located. There was no question that plaintiffs' property was the most valuable lot in the district. It was stated without question that plaintiffs paid $5,250 for their lot. Using market price, there was only one other lot in the district which was worth as much as $3,000; lot 1, block 2 is shown as being worth $3,450.

In plaintiffs' abstract is shown a schedule of the three appraisals which were in evidence, and we set it out in substance as follows:

| Blk. | Lot | High-low variance | Market | % of whole | Sewer appr's'l | % of whole | Paving appr's'l | % of whole |
|------|-----|-------------------|--------|-----------|----------------|-----------|-----------------|-----------|
| 9 | 1 | 8.4% | 5,250 | 24.4% | 1,255 | 28.5% | 1,000 | 20.1% |
| 4 | 1 | 1.5% | 2,640 | 12.0% | 535 | 12.0% | 660 | 13.5% |
| 4 | 2 | 2.5% | 2,220 | 10.3% | 420 | 9.5% | 595 | 12.0% |
| 4 | 3 | 1.1% | 2,400 | 11.1% | 445 | 10.1% | 560 | 11.2% |
| 3 | 5 | 1.5% | 2,850 | 13.2% | 515 | 11.7% | 630 | 12.7% |
| 3 | 6 | 1.3% | 2,670 | 12.4% | 590 | 13.3% | 680 | 13.7% |
| 2 | 1 | 2.2% | 3,450 | 16.0% | 650 | 14.7% | 840 | 16.9% |
| Total appraisals | | | 21,840 | | 4,410 | | 4,965 | |

It will be seen that there was an appraisal for the purpose of paving soon after the appraisal for the sewer. It is true that plaintiffs' lot bears 28.5% of the whole of the sewer tax and only 20.1% of the paving tax, but it is also true that the market value of plaintiffs' lot amounted to 24.4% of the total value of all the lots in the district.

Plaintiffs attack the manner of making the appraisement. Mr. Don Bottenberg, one of the appraisers for both the sewer and the paving assessment, was called by the plaintiffs as a witness. He quite frankly testified that in the sewer appraisement the job was done by using a factor of .0466 on a square foot basis. Just how this manner of appraisal is condemned by the above noticed statutes we do not understand.

Referring to Mr. Bottenberg's testimony further, we note that in one place he seemed to indicate that he thought the appraisal for the sewer district was nearer right than the appraisal for the paving district.

We fail to find that the Fourteenth Amendment has been violated in the making of this appraisal. Plaintiffs unquestionably have a very valuable site for a home on their lot. The appraiser

mentioned that the plaintiffs' lot was surrounded in the rear by what amounted to a private park and in this park there existed a stream or brook.

We have failed to find that plaintiffs have shown any invalidity in the appraisal for the sewer district. We do note that Lot 1, Block 2 is not connected with the lateral sewer being constructed for this district, but is connected with the main sewer by a separate means. Since Lot 1, Block 2 is the most valuable lot apart from that of the plaintiffs', we see no reason to think that plaintiffs would have a right or really want to take the other lot out of the district. We assume the owners of the lot in Block 2 were knowingly agreeable to being placed in the sewer district in the first place. They thus were assessed for the connection to the sewer.

We must affirm the trial court's decision. It is so ordered.