No. 53,373

ROBERT H. BECKER, *Appellant,* v. THE CITY OF WICHITA AND THE BOARD OF CITY COMMISSIONERS OF WICHITA, KANSAS, *Appellees,* and BERNARD J. ALBERTS, GERALD J. KATHOL, AND ROBERT L. WILLIAMS, *Appellants,* v. THE CITY OF WICHITA AND THE BOARD OF CITY COMMISSIONERS OF WICHITA, KANSAS, *Appellees.*

(644 P.2d 436)

Opinion filed May 8, 1982.

*Gary W. Davis,* of Martin, Pringle, Fair, Davis, Oliver & Triplett, of Wichita, argued the cause, and *William E. Dakan,* of the same firm was with him on the briefs for the appellants.

*Thomas R. Powell,* of Wichita, argued the cause, and *John Dekker,* of Wichita, was with him on the brief for the appellees.

The opinion of the court was delivered by

SCHROEDER, C.J.: The plaintiffs, as landowners, brought an action in the District Court of Sedgwick County, Kansas, seeking an order directing the defendant City of Wichita to reassess special improvement costs for street repaving within the Forest Hills Special Improvement District or, in the alternative, an order

enjoining the city from apportioning costs for the street improvements within the district under City of Wichita Ordinance No. 36-697. The lower court denied both the reassessment and the injunction. Plaintiffs appeal.

The facts are stipulated. Residents of the Forest Hills addition petitioned the city for a repaving of the streets in their area in 1975, but the City Commission disapproved the petition. In 1976 the Commission approved a repaving plan and set about implementing it. Plaintiffs' single objection is to the manner in which costs were apportioned among properties within the improvement district as drawn; therefore, only the details relative to assessment are pertinent to this inquiry.

The Forest Hills Special Improvement District, a residential area in Wichita, Kansas, contains a relatively few large lots in the western portion of the district and many substantially smaller lots throughout the rest of the district. Many of the lots, both large and small, are irregularly shaped. Plaintiffs' residences are located in what we will designate as Block 1 on four of the larger lots in the western part of the district. Many of the lots in Block 1 extend through the block, abutting Linden Drive on the east and West Parkway on the west.

The total improvement cost for the district was $1,045,297.32, allocated 64.9% to the benefit district and 34.1% to the city at large. Plaintiffs do not challenge this percentage allocation. To determine the special assessment of each landowner in the district, three appraisers were appointed to determine the fair market value of the land in the improvement district without regard to improvements thereon as authorized by K.S.A. 12-6a08 which provides in pertinent part:

"The portion of the cost of any improvement to be assessed against the property in the improvement district as determined in K.S.A. 12-6a04, shall be apportioned against said property in accordance with the special benefits accruing thereto by reasons of such improvement. Said cost may be assessed equally per front foot or per square foot against all lots and pieces of land within such improvement district or assessed against such property according to the value of said lots and pieces of land therein, such value to be determined by the governing body of said city with or without regard to the buildings and improvements thereon or said cost may be determined and fixed on the basis of any other reasonable assessment plan which will result in imposing substantially equal burdens or shares of the cost upon property similarly benefited."

For reasons which do not appear in the record, the Commission

found the method used to assign values to the lots in the benefit district invalid and rejected the proposed assessments. New appraisers were appointed and their proposed assessments approved by the City Commission over objection by some landowners. The plaintiffs then challenged those assessments in the district court. As noted above, the district court ruled adversely to the plaintiffs, denying reassessment and denying an injunction against the assessment as approved. On appeal, the plaintiffs contend the assessment plan violates the legal requirement that assessments for special improvement costs be fairly and substantially related to benefits accruing to assessed properties by reason of the special improvements. By virtue of that alleged violation, plaintiffs contend the assessment constitutes arbitrary and capricious action and an abuse of discretion requiring that the assessment plan be set aside. The defendant City of Wichita raises an issue on cross-appeal, alleging the trial court erred in overruling the city's motion for an order compelling plaintiffs to post a bond with one or more sufficient sureties securing to the city damages it might sustain.

Special assessments are often challenged in the courts. As a result, we deal with a well-developed body of law in this area although much depends on the facts of the individual case.

Special assessments are charges "imposed by a local government upon the owners of property specially benefited by a 'local' public improvement." 2 Antieau, Municipal Corporation Law § 14.00 (1982). The assessments are levied against property in proportion to the benefits conferred. *Davies v. City of Lawrence,* 218 Kan. 551, 557-58, 545 P.2d 1115 (1976); *Mullins v. City of El Dorado,* 200 Kan. 336, 341, 436 P.2d 837 (1968); *Gilmore, County Clerk v. Hentig,* 33 Kan. 156, 167, 5 Pac. 781 (1885). The extent to which property has received special benefits from a public improvement is a question of fact, legislative or administrative in nature, for determination by the authorized governing body, in this instance the Wichita City Commission. *Board of Education v. City of Topeka,* 214 Kan. 811, 819, 522 P.2d 982 (1974); *Mullins v. City of El Dorado,* 200 Kan. at 342; 70 Am. Jur. 2d, Special or Local Assessments § 23. That determination of benefit is presumed equitable and just and is ordinarily conclusive on the property owners and the courts. *Bell v. City of Topeka,* 220 Kan. 405, 420, 553 P.2d 331 (1976); *Mullins v. City of El Dorado,* 200

Kan. at 342; 70 Am. Jur. 2d, Special or Local Assessments § 23. Only if it can be shown so arbitrary and capricious that assessments are entirely disproportionate to benefits received will courts grant relief. *Board of Education v. City of Topeka,* 214 Kan. at 819; *Mullins v. City of El Dorado,* 200 Kan. at 342; *Giddings v. City of Pittsburg,* 197 Kan. 777, 783, 421 P.2d 181 (1966); *Schulenberg v. City of Reading,* 196 Kan. 43, 52, 410 P.2d 324 (1966); *Hurley v. Board of County Commissioners,* 188 Kan. 60, 65, 360 P.2d 1110 (1961); Note, *Municipal Corporations — Special Assessments - Assessment Plan Levying Special Assessments for Sidewalk Construction Against Non-Abutting Property Ruled Invalid,* 25 Kan. L. Rev. 286 (1977). To overcome the presumption of validity which attaches to the determination of the governing body, the plaintiff shoulders a heavy burden. *Snyder Realty Co. v. City of Overland Park,* 208 Kan. 273, 276, 492 P.2d 187 (1971); *Mullins v. City of El Dorado,* 200 Kan. at 342; 70 Am. Jur. 2d, Special or Local Assessments § 82.

The theory underlying the special assessment is that an owner does not pay in excess of what he receives by virtue of the improvement having been made. *Norwood v. Baker,* 172 U.S. 269, 278-79, 43 L. Ed. 443, 19 S.Ct. 187 (1898); *Davies v. City of Lawrence,* 218 Kan. at 557-58; *Mullins v. City of El Dorado,* 200 Kan. at 341. While it is universally accepted that the amount of the special assessment cannot substantially exceed the benefit ( 2 Antieau, Municipal Corporation Law § 14.32 [1982]; 14 McQuillin, The Law of Municipal Corporations § 38.124 [3rd ed. 1970]), the assessment-benefit rule does not contemplate mathematical precision.

"The most that can be expected of a governing body . . . is to estimate the benefits to each tract of land upon as uniform plan as possible so that the assessment against a particular piece of property is substantially proportionate to the benefits received." 200 Kan. at 347.

See also 2 Antieau, Municipal Corporation Law § 14.43 (1982).

Valuation of land without regard to improvements is a generally accepted method of estimating benefits to individual tracts. 2 Antieau, Municipal Corporation Law § 14.41 (1982); 70 Am. Jur. 2d, Special or Local Assessments § 89. This court has recognized the validity of the valuation method as well as the consequence that under the valuation method the most valuable property is taxed the most. *Koerner v. City of Wichita,* 190 Kan. 663, 664-65,

378 P.2d 42 (1963). This court has also recognized that, while it is a "fair and legal" mode of assessment, the valuation method "might in particular instances work injustice or hardship, and not be legal or valid . . . ." *Gilmore, County Clerk v. Hentig,* 33 Kan. at 173. See also *Mullins v. City of El Dorado,* 200 Kan. at 343. Plaintiffs in this action vigorously attack the validity of the valuation method for the street development project in question.

At trial, the plaintiffs argued a front footage method should have been used to calculate their portion of the street repaving assessment. They relied heavily on the expert testimony of a mathematics professor from Wichita State University who compared the amount assessed under the valuation method with the *cost of paving* those portions of the streets in front of plaintiffs' residences to arrive at the conclusion the plaintiffs had been over-assessed. The trial court addressed the argument and found as a matter of fact that had the improvement cost been calculated on a front footage basis the *average* cost per frontage foot would have been $22.30. The assessments on plaintiffs' property substantially exceeded that average and a number of parcels within the district were assessed improvement costs at a rate substantially below that average. Viewed from another perspective and considering all parcels in Block 1, the landowner portion of the actual cost of paving the abutting streets was 16% of the project pavement cost; whereas, the assessment to Block 1 owners was 29% of the project pavement cost. At first blush, this argument that each landowner pay only for the cost of the pavement in front of his property is appealing. In this case, the configuration of plaintiffs' lots was such that a front footage calculation would have resulted in a lower assessment than the valuation method used. Further testimony revealed, however, that distortions occur under the front footage method when lots are of an irregular shape as the lots in this district admittedly are. Computational allowances must be made for corner lots which have extraordinary exposure as well as for those lots located in cul-de-sacs which have the advantage of minimal street exposure. While the front footage method would have been the most advantageous method for these plaintiffs in that it would have been the least expensive, it would not necessarily have equated with the benefits received.

The lengthy discourse at trial on determining special assess-

ments as a percentage of paving costs obscures the fact that K.S.A. 12-6a08 provides first and foremost that the assessed cost of an improvement reflect the special benefits accruing to the property by reason of the improvement. The plaintiffs' second witness, a real estate appraiser, stated the measure of benefit is roughly parallel to the cost of laying the asphalt in front of the property. The trial court found, however, that because of the irregularly shaped lots in this district no assessment formula could accomplish a direct relationship between benefit and cost of paving. That finding is supported by the evidence.

Through testimony presented at trial, plaintiffs in this action have shown that the front footage method of assessment would have resulted in a lower assessment on their property than the valuation method used. They have also shown that the property owners in Block 1 were assessed a greater sum than the average cost of paving their front footage. The evidence presented, however, does not support a finding that the city acted arbitrarily and capriciously in using the valuation method to estimate benefits. The trial court found that the plaintiffs had failed to sustain their burden of proof. Plaintiffs own large irregularly shaped lots, three of which extend through an entire block with potential, if not actual, access from two streets. There is not in this situation the kind of substantial disparity between assessments and benefits which has led this court to find arbitrary and capricious action by governing bodies in other special assessment cases. See, *e.g., Bell v. City of Topeka,* 220 Kan. 405; *Davies v. City of Lawrence,* 218 Kan. 551; *Hurley v. Board of County Commissioners,* 188 Kan. 60. The findings of the trial court are supported by the record.

We turn to the cross-appeal of the defendant City of Wichita. Prior to trial, the defendants moved for an order compelling plaintiffs to post a bond to secure damages that might be sustained by the defendants, including interest on temporary notes accrued as a result of defendants' inability to issue general obligation bonds during the pendency of this litigation. The motion was overruled. In upholding that decision of the trial court, we note that specific statutory provision is made for unanticipated additional interest on temporary notes to be assessed against the city at large. K.S.A. 10-114a. To do otherwise and subject plaintiffs to liabilities larger than the amounts of their protested assessments would severely curtail the right of citizens to challenge the actions of governing authorities.

The decision of the lower court is affirmed.